**Luis ALARCON–SERRANO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 99–70578.

United States Court of Appeals, Ninth Circuit.

Submitted May 4, 2000[1]

Filed July 25, 2000

---

1. The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Joseph M. Bacho, El Centro, California, for the petitioner.

Paul D. Kovac, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for the respondent.

Before: WALLACE, TROTT, and GOULD, Circuit Judges.

TROTT, Circuit Judge:

Luis Alarcon–Serrano ("Alarcon–Serrano") petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming an Immigration Judge's ("IJ") order of exclusion. Alarcon–Serrano claims that the IJ and BIA lacked sufficient evidence to conclude that it was reasonable to believe Alarcon–Serrano knowingly participated in drug trafficking. The Immigration and Naturalization Service ("INS") argues that this court lacks jurisdiction and, in the alternative, that the BIA's decision is supported by substantial evidence. We agree with the INS that we lack jurisdiction pursuant to section 309(c)(4)(G) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 110 Stat. 3009, 3625–627.[2] Thus, we dismiss Alarcon–Serrano's petition.

### Background

Alarcon–Serrano, a then-nineteen year old resident of Mexicali, Mexico, with lawful permanent resident status in the United States, was detained by immigration officers upon attempting to cross the border at Calexico, California, while driving a car carrying eighty-six pounds of marijuana concealed in a secret compartment. Exclusion proceedings commenced. The INS alleged that he was excludable under two separate provisions of the INA: section 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C), as a "Controlled substance trafficker;" and section 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II), governing conviction of an offense related to controlled substances or the admission to committing the essential elements of a controlled substance offense.[3] The facts leading up to

2. Alarcon–Serrano is subject to IIRIRA's transitional rules, as the BIA dismissed his appeal from the IJ's decision on April 14, 1999, and exclusion proceedings began with the delivery to Alarcon–Serrano on December 1, 1996, of a "Notice to Applicant for Admission Detained for Hearing Before Immigration Judge." See Kalaw v. INS, 133 F.3d 1147, 1149–50 (9th Cir.1997).

3. Although the INS attempts to use both of these provisions to support the IJ and BIA decisions, four reasons dictate that we rely only upon section 212(a)(2)(C) in reaching our conclusion in this case: (1) both the IJ and BIA relied solely on section 212(a)(2)(C) in reaching their decisions; (2) there is no evidence that Alarcon–Serrano has been convicted of anything, see § 212(a)(2)(A)(i)(II) (making excludable "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—(II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance"); (3) Alarcon–Serrano consistently denied—that is, did not admit—having knowledge of the marijuana's presence, see id.; and (4) neither the IJ, nor the BIA, nor the INS point to any particular law or regulation the essential elements of which Serrano admits to having committed, see id.

Alarcon–Serrano's attempted crossing at Calexico are as follows, as testified to by Alarcon–Serrano at his IJ hearing.

Four days prior to his attempted crossing from Mexico to the United States, Alarcon–Serrano met a man named Isaac through a friend. Alarcon–Serrano had heard through friends that Isaac was engaged in smuggling drugs across the border. On the day of his attempted crossing, Alarcon–Serrano told Isaac that he was going to Calexico in order to buy some clothes for his visit to a discotheque in Mexicali later that evening. Isaac offered Alarcon–Serrano a car to drive on his shopping trip and, "so that they wouldn't take the vehicle away in Calexico," also offered to provide a bill of sale for the vehicle in Alarcon–Serrano's name. Knowing Isaac's reputation, Alarcon–Serrano testified that he suspected that the car carried drugs. Nevertheless, Alarcon–Serrano claimed he trusted that Isaac would not attempt to use him to smuggle drugs, so he took the car notwithstanding his misgivings.

Although he began his journey to the border at 8 p.m., Alarcon–Serrano arrived at the border crossing itself at 9:15 that evening due to the length of the vehicle lines leading up to the crossing. Alarcon–Serrano testified that he had not told Isaac "the exact hour" that he would be crossing the border, but that he observed Isaac crossing the border by foot at the time he drove into the area. When Alarcon–Serrano saw that the border officials intended to stop his vehicle, he claims he honked his horn at Isaac, who looked at him and then looked away. Border officials stopped the car and found the concealed marijuana.

Alarcon–Serrano appeared pro se at his IJ hearing, having waived the opportunity to seek a lawyer. At the hearing, Alarcon–Serrano consistently denied knowledge of the concealed marijuana. The IJ expressed doubt about Alarcon–Serrano's claimed lack of knowledge, focusing on the fact that he had received the car and a bill of sale in his name from a suspected drug-smuggler he had met only four days prior

to his attempted border crossing. The IJ also found that the amount of the concealed marijuana was "simply too large of a quantity and too valuable to have been entrusted to a person unaware of its existence."

Referencing their alleged simultaneous arrival at the border crossing, the IJ found contradictory Alarcon–Serrano's testimony surrounding the extent of Isaac's knowledge of the details of Alarcon–Serrano's shopping trip to Calexico. The IJ also found suspicious Alarcon–Serrano's lack of basic facts about the friend through whom he had met Isaac. Alarcon–Serrano testified that he was not sure of his friend's last name, although he thought it was "Martinez," and could not remember the name of the street where his friend lives, although the two live only ten blocks apart. While earlier discussing character letters offered on his behalf by friends, neighbors, and relatives, Alarcon–Serrano told the IJ that "I don't really know the last names of my friends."

Finally, the IJ noted that Alarcon–Serrano intended to go shopping in the United States at Walmart and Foot Locker late in the evening, but testified that he did not know when the stores closed. Alarcon–Serrano testified that if Walmart and Foot Locker were closed, he would simply go to another store that was open.

The IJ found that "circumstances correlate to show that [Alarcon–Serrano] colluded with a known drug trafficker to import in to the United States more than 80 pounds of marijuana," and told Alarcon–Serrano that "the evidence is clear, convincing and unequivocal that you were a knowing trafficker in the smuggling of marijuana." The BIA agreed with the IJ that Alarcon–Serrano lacked credibility:

> his credibility is undermined by the fact that such a large amount of marijuana— 86 pounds—was found concealed in the car he was driving, by his admission that he knew the person who gave him the car was a drug dealer, and by his implausible explanations for how he came

into possession of the car and why he attempted to enter the United States. The BIA dismissed Alarcon–Serrano's appeal from the IJ's order excluding and deporting him from the United States, effectively affirming the IJ's decision.

### Discussion

■ We determine our own jurisdiction de novo. *See Milne v. Hillblom,* 165 F.3d 733, 735 (9th Cir.1999). The BIA's factual findings are reviewed for "substantial evidence" and will not be overturned unless the evidence compels a contrary conclusion. *See Yazitchian v. INS,* 207 F.3d 1164, 1168 (9th Cir.2000).

■ Before we may conclude that we lack jurisdiction to review Alarcon–Serrano's case, we must determine that his case falls within the terms of section 309(c)(4)(G). We have jurisdiction to consider this jurisdictional question. *See Ye v. INS,* 214 F.3d 1128, 1131–32 (9th Cir. 2000); *Aragon–Ayon v. INS,* 206 F.3d 847, 849 (9th Cir.2000).

■ Under IIRIRA section 309(c)(4)(G), "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) ... of the [INA] (as in effect as of the date of the enactment of this Act)...." The IJ and BIA determined that Serrano was excludable pursuant to INA section 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C) (amended 1999) (West Supp.2000). At the time of the IJ hearing in this case, section 212(a)(2)(C) designated as inadmissible "[a]ny alien who the consular or immigration officer knows or has reason to believe is or has been an illicit trafficker in any such controlled substance or is or has been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking in any such controlled substance." INA § 212(a)(2)(C). In reviewing the jurisdictional facts, we may only consider whether, pursuant to IIRIRA section 309(c)(4)(G), Alarcon–Serrano is (i) an alien (ii) who is inadmissible (iii) by reason of having committed a criminal offense listed in INA section 212(a)(2). If so, we lack jurisdiction to proceed any further in our review. *See Magana–Pizano v. INS,* 200 F.3d 603, 607 (9th Cir. 1999).

■ Although he has permanent resident status, there is no dispute that Alarcon–Serrano is an alien. The only viable question is whether he is inadmissible by reason of a criminal offense under INA section 212(a)(2)(C). Unlike other provisions of INA section 212(a)(2), the provision applicable to Alarcon–Serrano does not require a conviction to demonstrate inadmissibility and, for purposes of IIRIRA section 309(c)(4)(G), a lack of federal appellate review. Under section 212(a)(2)(C), the only requirement is that an immigration officer "knows or has reason to believe" that Alarcon–Serrano is an illicit trafficker in controlled substances or that Alarcon–Serrano has knowingly assisted, abetted, conspired with, or colluded with others in such illicit trafficking.

■ The appropriate way of measuring whether the IJ and BIA had "reason to believe" that Alarcon–Serrano knew he was participating in drug trafficking is to determine whether substantial evidence supports such a conclusion. In this regard, the conclusion of the immigration judge must be affirmed if based on reasonable, substantial, and probative evidence. *See Hamid v. INS,* 538 F.2d 1389, 1390–91 (9th Cir.1976). Although to some extent this conflates review of the jurisdictional facts and review of the merits in this case, *see Ye,* 214 F.3d at 1131–32, this is the correct path to follow.

Both the BIA and the IJ in this case found that it was reasonable to believe that Alarcon–Serrano knew he was participating in drug trafficking by taking and attempting to drive across the border a car—carrying eighty-six pounds of marijuana in a concealed compartment—given to him by a man he knew to be a drug smuggler whom he had met only four days earlier. Alarcon–Serrano was therefore

determined to be inadmissible pursuant to INA section 212(a)(2)(C). Alarcon–Serrano's inadmissibility pursuant to INA section 212(a)(2)(C) is undoubtedly supported by substantial probative evidence. Both the BIA and the IJ disbelieved Alarcon–Serrano's testimony claiming lack of knowledge. While a generous fact-finder might have believed Alarcon–Serrano's version of the facts, both the BIA and IJ were clearly within reason on these facts and circumstances to conclude otherwise.

Because an immigration officer had ample reason to believe that Alarcon–Serrano knowingly engaged in drug trafficking, we lack jurisdiction to consider Alarcon–Serrano's petition for review pursuant to IIRIRA section 309(c)(4)(G). Hence, the petition is DISMISSED.