**Carlo PONDOC HERNAEZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 99–70440.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 2001

Filed March 27, 2001

James A. Stanton, Stanton, Clay, Tom, Chapman & Crumpton, Honolulu, Hawaii, for the petitioner.

Ronald E. LeFevre, Immigration & Naturalization Service, San Francisco, California, for the respondent.

Mark C. Walters, Norah Ascoli Schwarz, and Alice E. Loughran, Office of Immigration Litigation, Washington, D.C., for the respondent.

Before: B. FLETCHER, FERNANDEZ, and PAEZ, Circuit Judges.

PAEZ, Circuit Judge:

Petitioner Carlo Hernaez, a citizen of the Philippines, is HIV-positive and a homosexual. An Immigration Judge ("IJ") ordered him deported on the bases of overstaying his visa and his drug addiction. The Board of Immigration Appeals ("BIA") affirmed, denying his motions to remand for consideration of an application for suspension of deportation and to reopen for consideration of an asylum application. The case presents a threshold question under the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"): Does Hernaez's status as an admit-

ted drug addict preclude this court from exercising jurisdiction over his petition for review? We hold that because drug addiction cannot be considered a criminal offense, we have jurisdiction over Hernaez's case. But we affirm the denial of his motions to remand and reopen.

FACTUAL BACKGROUND

Petitioner Hernaez arrived in Hawaii on a six-month visitor visa on September 13, 1987. On March 10, 1988, just before his visa expired, he married a United States citizen, who filed a visa petition on his behalf. Within a year, however, the couple divorced, and Petitioner's wife notified the Immigration and Naturalization Service ("INS") that the marriage had been fraudulent and withdrew the petition. On August 24, 1989, the INS mailed Petitioner a notice that his visa application had been denied and that he had until September 13, 1989, to voluntarily depart. Petitioner claims he never received that notice.

A. Initial Deportation Proceedings

Nearly two years later, on May 22, 1991, Petitioner applied to the INS for an alien registration receipt card because he had never received one. On May 30, 1991, he submitted the following handwritten statement to the INS:

> I, Carlo P. Hernaez, a Filipino citizen who came to Hawaii on September 13, 1988 as a tourist with a multiple indefinite visa.... I got married to Connie Balidio on March 12, 1989. The married [sic] didn't work out after a year so I filed a divorce after we did all the means to save it.... Last year, until the month of March this year, I'd been heavily involved in my drug use. Then, I seek some help ... in a rehabilitate [sic] center.[1]

He gave his address as the drug treatment facility.

---

1. It is unclear why Petitioner wrote this statement eight days after his initial inquiry. He claims he was "induced into writing" it, but does not say who persuaded him.

The INS did not respond to Petitioner's request, and in March 1992, he went to the INS in person with the following note:

I, Carlo P. Hernaez, was in A Second Chance, a drug and alcohol rehabilitation program in the month of March to September 1991 for treatment. I do have a drug problem that I had decided to get help [sic]. Now, I'm ... presently covered by welfare. I came today to ask for a note in order for me to get a state I.D. in which enable me to have an identification card. My main goal at this time is to get a job and be a part of the society. I want to live a new life.

Petitioner was arrested as an "alien not lawfully entitled to be or remain in the United States." He was advised of his rights, including the right to counsel and that "any statement made might be used against him in subsequent administrative proceedings," and was provided with a list of free legal services. After being advised of these rights, Petitioner agreed to make the following statement under oath:

I, Carlo P. Hernaez, a citizen of the Philippines, came to Hawaii on [S]eptember 13, 1987, as a tourist.... From August of 1990 to about March 1991 I've been heavily involved in my drug use, crystal methamphetamine, I seek some help. I received treatment from March 27, 1991 to August 13, 1991 at "A SECOND CHANCE".... It's up to me now to stay away from drugs. I am on welfare and desire to seek employment.

The INS instituted deportation proceedings against Petitioner by issuing an order to show cause ("OSC") alleging that Petitioner had been notified that the visa petition filed by his ex-wife had been withdrawn, that he had failed to voluntarily depart, and that he had been a drug abuser. Petitioner was charged with deportability for violation of the Immigration and Nationality Act ("INA") § 241(a)(1)(B) (co-

dified at 8 U.S.C. § 1227(a)(1)(B)) (overstay), and INA § 241(a)(2)(B)(ii) (codified at 8 U.S.C. § 1227(a)(2)(B)(ii)) (having been a drug abuser or addict).[2]

At a hearing before the IJ on December 9, 1992, Petitioner admitted all the allegations in the OSC but denied deportability and alienage, claiming citizenship through his parents, who were born in the Philippines during a time when it was a territory of the United States. He has since abandoned that claim, as well as his challenge to the denial of voluntary departure.

At the conclusion of the hearing, the IJ found Petitioner deportable based on the charges in the OSC and Petitioner's admissions. The IJ also found that Petitioner was ineligible for voluntary departure because his drug abuse prevented him from making the requisite showing of good moral character, as required by INA §§ 241(a)(2)(B)(ii), 244(a) (codified at 8 U.S.C. §§ 1227(a)(2)(b)(ii), 1254(a)).

**B. Appeal to the Board of Immigration Appeals**

Petitioner timely appealed to the BIA, claiming that as a United States citizen, he was not subject to deportation. Petitioner also claimed that because he was not convicted of a drug offense, his drug abuse did not disqualify him from voluntary departure. The INS opposed the appeal on both grounds.

**1. Motion to remand for consideration of application for suspension of deportation**

On May 14, 1996, while his appeal was pending, Petitioner filed an application for suspension of deportation under former INA § 244(a)(1) (codified at 8 U.S.C. § 1254(a)(1) and repealed by the Illegal Immigration Reform and Responsibility Act ("IIRIRA") § 308(b)(7), Pub.L. 104–

---

**2.** These sections, formerly codified at 8 U.S.C. § 1251, were transferred to § 1227 by the Illegal Immigration Reform and Immigrant Responsibility Act § 305(a)(2), Pub.L. 104–

208, 110 Stat. 3009–546, 3009–598 (Sept. 30, 1996), *amended by* Pub.L. 104–302, 110 Stat. 3656 (Oct. 11, 1996).

208, 110 Stat. 3009–546, 3009–615 (Sept. 30, 1996), *amended by* Pub.L. 104–302, 110 Stat. 3656 (Oct. 11, 1996)), and moved to have his case remanded to the IJ to consider the merits of his suspension application. He withdrew his claim to citizenship, and instead argued that he was eligible for suspension of deportation because he had overstayed his visa long enough to acquire the seven years in the United States required to establish permanent residency. Former § 244(a)(1) provided for permanent residency for aliens living in the United States for a continuous period of seven years, if they were "of good moral character" and if deportation would "result in extreme hardship." Former § 244(a)(2) provided for permanent residency for aliens deportable on specific grounds, including drug abuse or addiction, if they had lived in the United States for ten years following commission of the act upon which deportation was based and met the other requirements of former § 244(a)(1).

Petitioner's claim to extreme hardship was that he was an HIV-positive homosexual who had acquired this disease after arriving in the United States. Petitioner claimed that medical treatment would be unavailable to him in the Philippines and he would either have to hide his homosexuality or bear the "brunt of discrimination, maltreatment, and being ostracized." He alleged that he would be condemned by the Catholic Church in the Philippines. Petitioner supplemented his application with documentation of the treatment of homosexuals in the Philippines. On August 8, 1996, the INS opposed remand, arguing that petitioner was subject to former § 244(a)(2) and was statutorily ineligible for suspension of deportation because he had not lived in the United States for ten years after his disqualifying act of drug abuse.

2. Motion to reopen to apply for asylum and withholding of deportation

On September 27, 1996, Petitioner filed an application for asylum and withholding of deportation and a motion to reopen to consider the application. Petitioner claimed that his "fear of homophobic persecution from the church, or from members of the public, is a valid ground upon which" to apply for asylum. Petitioner claimed that medical treatment for HIV is not available in the Philippines and that he has a well-founded fear of persecution in that country. He resubmitted some of the material included in his suspension application. The INS opposed reopening, arguing that Petitioner had failed to meet the requirements for reopening because he submitted no new previously unavailable evidence. 8 C.F.R. § 3.2(c)(1).

3. The BIA's Decision

On March 23, 1999, the BIA dismissed Petitioner's appeal and denied his motions to reopen and remand. The BIA found that Petitioner had failed to qualify for remand to consider his application for suspension of deportation because he had not made a prima facie showing of eligibility: "As the respondent has not been present in the United States for 10 years after his drug use, he is statutorily ineligible for suspension of deportation."

Second, the BIA found that Petitioner had failed to establish a reasonable likelihood of success on the merits of his asylum claim because he failed to show that he would be persecuted or had a well-founded fear of persecution based on his status as an HIV-positive homosexual. Rather, the BIA found that Petitioner's evidence showed nothing more than occasional discrimination and harassment, which alone do not constitute persecution. The BIA further found that there was no evidence to show that the Filipino government engages in persecution or is unwilling or unable to control groups that may engage in such conduct. Therefore, the BIA denied Petitioner's motion to reopen.

Petitioner timely appeals.

## Standard of Review

 Subject to the restrictions of IIRIRA, which we address below, we review the BIA's interpretation of purely legal questions de novo. *Ladha v. INS,* 215 F.3d 889, 896 (9th Cir.2000). However, the BIA's interpretations and application of the immigration laws are entitled to deference. *Id.* The BIA's factual findings are reviewed under the substantial evidence standard. *Navas v. INS,* 217 F.3d 646, 657 (9th Cir.2000); *see also INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (holding that the BIA's findings of fact can be reversed only if the evidence presented is "such that a reasonable factfinder would have to conclude" otherwise).

## Discussion

### A. Jurisdiction

The INS instituted removal proceedings against Hernaez on March 3, 1992, before IIRIRA went into effect. But because the BIA entered its decision after September 30, 1996, judicial review is governed by IIRIRA's transition rules. IIRIRA § 309(c)(4), 110 Stat. at 3009–626—3009–627. The INS first contends that this court lacks jurisdiction to hear Hernaez's appeal under the transition rules. We disagree.

 We review the jurisdictional limits of IIRIRA de novo. *Luu–Le v. INS,* 224 F.3d 911, 914 (9th Cir.2000). IIRIRA's transitional rules prohibit appeals "in the case of an alien who is ... deportable by reason of having committed a criminal offense covered in" several sections of the INA, including § 241(a)(2)(B). IIRIRA § 309(c)(4)(G), 110 Stat. at 3009–626. Petitioner argues that we retain jurisdiction over his petition for review because the ground for his deportation, INA § 241(a)(2)(B)(ii) (drug abuse or addiction), is not a "criminal offense."

 The INS relies on *Alarcon–Serrano v. INS,* 220 F.3d 1116 (9th Cir.2000), for the proposition that we lack jurisdiction because INA § 241(a)(2)(B)(ii) (codified at 8 U.S.C. § 1227(a)(2)(B)(ii)) does not require a conviction to demonstrate deportability and a lack of federal appellate jurisdiction. The deportation in *Alarcon–Serrano* was based on INA § 212(a)(2)(C) (codified at 8 U.S.C. § 1182(a)(2)(C)), which "[u]nlike other provisions of INA section 212(a)(2) ... does **not** require a conviction to demonstrate inadmissibility and ... a lack of federal appellate review." 220 F.3d at 1119; *see also* 8 U.S.C. § 1182(a)(2)(C) (designating as inadmissible "[a]ny alien who the consular or immigration officer knows or has reason to believe is or has been an illicit trafficker in any such controlled substance ..." ). Similarly, 8 U.S.C. § 1227(a)(2)(B)(ii), which makes drug addiction grounds for deportation, does not require a conviction, unlike the other provisions of that section. *Cf.* 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who ... has been **convicted** of a violation of ... any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... is deportable.") (emphasis added). *See also In re Perez,* Int. Dec. 3389, 1999 WL 293944 (BIA May 12, 1999) ("[W]hen Congress intends a conviction to control eligibility for cancellation of removal, it has expressly said so.... [T]his distinction between the commission and the conviction of offenses occurs repeatedly throughout the Act."). Congress could have required a conviction for use or possession of illegal drugs as a prerequisite to deportation, but it did not. This conclusion is in accord with the position of the BIA, which has observed that inadmissibility (or deportation) for controlled substances offenses "may be established by a conviction, but ... **may also** be established by the admission to the commission of ... one of those offenses." *In re Perez, supra* (emphasis added). Therefore, the INS is correct that no conviction is required under INA § 241(a)(2)(B)(ii) for the purpose of deportation. However, Petitioner's argument is

**not** that a conviction is required to strip this court of jurisdiction. Rather, he contends that IIRIRA § 309(c)(4)(G), the jurisdiction-stripping provision, applies only to criminal offenses, which drug addiction is not.

■ The language of the transition rules that removes this court's jurisdiction is different from the language of the sections of the INA establishing grounds for deportation. Under IIRIRA § 309(c)(4)(G), Petitioner must have committed a "criminal offense" to divest this court of jurisdiction. As the INS argues, under *Alarcon–Serrano*, such a criminal offense could be proven without a conviction. But the issue here is the more fundamental question whether drug addiction is actually a "criminal offense."

The legislative history of IIRIRA provides little guidance in answering the question. Congress was obviously concerned with speeding up the deportation of criminal aliens, particularly those who had committed drug offenses. *See, e.g.,* 142 Cong. Rec. H11,071–02, *H11,085 (daily ed. Sept. 25, 1996) (statement of Rep. Gilman) ("We have a strong obligation in protecting our citizens from illegal criminal aliens, who prey on them with drugs.... Nearly one-fourth of our Nation's jail cells ... are occupied by criminal aliens, mostly those who have engaged in drug related offenses."). But Congress did seem to be focused particularly on aliens who had actually been convicted of crimes. *See, e.g.,* 142 Cong. Rec. S3328–04, *3328 (daily ed. April 15, 1996) (statement of Sen. Abraham) ("[A]lmost half a million felons are living in this country illegally. These aliens have been convicted of murder, rape, drug trafficking...."); 142 Cong. Rec. S11,711–01, *11,711 (daily ed. Sept. 28, 1996) (statement of Sen. Simpson)

("There is a streamlined system for deporting aliens convicted of crimes.").

Most importantly, the Supreme Court has recognized that drug addiction is an illness and that "a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." *Robinson v. California,* 370 U.S. 660, 666–67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).[3] Based on *Robinson,* we now hold that mere "drug abuse[ ] or addict[ion]" cannot be considered a "criminal offense" for purposes of removing jurisdiction from this court.

One wrinkle in this case, however, is that Hernaez admitted to using crystal methamphetamine, which is an illegal drug. *See, e.g.,* 21 U.S.C. § 812 (making methamphetamine a "controlled substance"). Under *Alarcon–Serrano,* the transitional rules only require that petitioner have "committed a criminal offense" to strip this court of jurisdiction; they do not require conviction. But the OSC never charged Petitioner with having committed a criminal offense involving methamphetamine. Nor did the IJ and BIA find him deportable on the basis of committing such an offense. We have previously held that we cannot sua sponte find that a petitioner has committed a criminal offense for the purpose of IIRIRA § 309(c)(4)(G): "In the Order to Show Cause..., the INS must charge the crimes for which an alien is subject to deportation under IIRIRA § 309(c)(4)(G).... Because the INS did not charge [Petitioner] with any crime ... in the OSC, IIRIRA § 309(c)(4)(G) does not divest this court of jurisdiction." *Hernandez–Montiel v. INS,* 225 F.3d 1084, 1090 (9th Cir.2000) (internal

---

**3.** The Court limited its *Robinson* holding in *Powell v. Texas,* 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). There, the Court found that imprisoning an alcoholic for public drunkenness was constitutional because the "appellant was convicted, not for being a chronic alcoholic, but for being in public

while drunk on a particular occasion." 392 U.S. at 532, 88 S.Ct. 2145. In contrast, extending IIRIRA § 309(c)(4)(G) to cover drug addiction would treat "mere status," *Powell,* 392 U.S. at 532, 88 S.Ct. 2145 rather than a specific act, as a criminal offense, in contravention of the *Robinson* decision.

citations omitted). Here, too, the INS only charged Petitioner with being a drug addict. Any criminal offenses we might suppose he committed cannot divest us of jurisdiction. Because mere drug addiction cannot be considered a criminal offense, we have jurisdiction to consider Hernaez's petition for review.

B. Motion to remand to consider claim for suspension of deportation

The BIA concluded that Petitioner is ineligible for suspension of deportation because he had not accrued 10 years of residency in the United States after his drug abuse ended. Because, under IIRI-RA, we no longer have jurisdiction to review "any discretionary decision under section . . . 244," § 309(c)(4)(E), 110 Stat. at 3009–626, our review is limited to the question of Petitioner's statutory eligibility for suspension of deportation. At oral argument, Petitioner's counsel conceded he is ineligible for suspension of deportation under IIRIRA's "stop-time rule," which requires aliens to meet the continuous physical presence requirement before their deportation proceedings commence. INA § 240A(d)(1) (codified at 8 U.S.C. § 1229b(d)(1)). *See also Ram v. INS*, No. 99–70918, 2001 WL 173309, *amended by* 243 F.3d 510 (9th Cir.2001). Because Petitioner had been in the United States less than five years, and out of drug treatment less than a year, before deportation proceedings were instituted against him, we agree that his petition must be denied on this ground.

C. Motion to reopen to apply for asylum and withholding of deportation

Lastly, Petitioner appeals the denial of his motion to reopen for consideration of his application for asylum and withholding of deportation. "A motion to reopen shall not be granted unless it appears . . . that [the] evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.2(c)(1). We hold that Hernaez has not met his burden, and the BIA's denial of the motion to reopen was not in error.

Since at least 1990, two years before the present deportation proceedings were instituted, it has been clear that the petitioner's sexual orientation can form the basis of an asylum claim. *See In re Tobo-so–Alfonso*, 20 I & N Dec. 819, 820–23, 1990 WL 547189 (BIA 1990). Petitioner presented no new evidence in support of his motion to reopen. The documentation he presented was the same evidence he used in support of his earlier motion to remand. There is no reason he could not have raised his asylum claim at the time of his initial hearing or at the time of the motion to remand. Therefore, Hernaez's petition must be denied on this ground, and we do not reach the merits of his asylum claim.

### CONCLUSION

We have jurisdiction over Hernaez's petition for review because his admitted drug addiction cannot be considered a "criminal offense" for the purpose of the jurisdiction-stripping provision of IIRIRA § 309(c)(4)(G). However, the BIA did not err in denying Hernaez's motions to remand and reopen.

PETITION DENIED.