Javier Ramon LOPEZ–MOLINA,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–74095.

United States Court of Appeals,
Ninth Circuit.

Argued Feb. 11, 2004.

Submitted Feb. 25, 2004.

Filed June 2, 2004.

Bertram Polis, Tucson, AZ, for the peti-
tioner.

Genevieve Holm, United States Depart-
ment of Justice, Office of Immigration Lit-
igation, Washington, DC, for the respon-
dent.

Before: TASHIMA and CLIFTON, Circuit Judges, and LEIGHTON, District Judge.*

Opinion by Judge Clifton; Dissent by Judge Tashima

CLIFTON, Circuit Judge:

Javier Ramon Lopez–Molina, a native and citizen of Mexico, petitions for review of a summary affirmance by the Board of Immigration Appeals (BIA) of an order of removal entered by the immigration judge (IJ). Before addressing the merits of his petition, we must determine whether the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) divests this court of jurisdiction to review Lopez–Molina's removal order. More specifically, we must decide whether 8 U.S.C. § 1252(a)(2)(C)—which bars our review of a removal order when the alien "is removable by reason of having committed a criminal offense covered in section 1182(a)(2)"—applies when the alien is removable pursuant to 8 U.S.C. § 1182(a)(2)(C) because an immigration official has "reason to believe" the alien was involved in illicit drug trafficking. Because our decision in *Alarcon–Serrano v. INS*, 220 F.3d 1116 (9th Cir. 2000) held that we lacked jurisdiction under nearly identical circumstances, we dismiss Lopez–Molina's petition for review.

## I. BACKGROUND

In 1990, Arizona law enforcement officers, acting on a tip regarding the transport of a load of marijuana, placed Lopez–Molina and four other suspects under surveillance. After observing several meetings between the suspects, officers attempted to stop the vehicle that Lopez–Molina was driving. Upon seeing the police pursuit, Lopez–Molina exited the vehicle and attempted to escape on foot before he was ultimately captured. Officers then searched the vehicle and found 147 pounds of marijuana concealed in the trunk. While in custody, Lopez–Molina stated that he thought the plastic bags in the trunk contained garbage and denied knowledge of the marijuana. Although he claimed that he and a friend had borrowed the car to "purchase some items," he could not say what store they were going to or what items they were going to purchase. Lopez–Molina then told police that he only ran from the officers because he was afraid that they were immigration officials. For reasons unknown, Lopez–Molina was not immediately prosecuted.

In 1995, Lopez–Molina was admitted into the United States as a non-immigrant visitor. A year later, the federal government charged him with violating 18 U.S.C. § 4 (Misprision of Felony), a charge that arose out of his 1990 drug-related arrest in Tucson, Arizona. According to the Information, Lopez–Molina had knowledge of a "conspiracy to possess marijuana with intent to distribute, [but] concealed and failed ... to make said offense known." Lopez–Molina eventually pleaded guilty to this charge.

In 1997, Lopez–Molina applied for an adjustment of status to that of a permanent resident. This application was denied and soon thereafter, the government filed a Notice to Appear (NTA), charging that Lopez–Molina was subject to removal because he was an inadmissible alien under 8 U.S.C. § 1182(a)(2)(C) at the time of adjustment of status, and thus deportable pursuant to 8 U.S.C. § 1227(a)(1)(A).[1]

---

* The Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation.

1. According to the NTA, Lopez–Molina was inadmissible under § 1182(a)(2)(C) because he was an alien "who the consular officer or the Attorney General knows or has reason to believe is or has been an illicit trafficker in any controlled substance or is or has been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking in any such controlled substance." The govern-

At a master calendar hearing before an IJ, Lopez–Molina entered a general denial of the allegations in the NTA. During the subsequent evidentiary hearing, the government offered a set of documents into evidence, including an Arizona Department of Public Safety Report detailing the circumstances of his 1990 drug arrest (DPS Report), the Information to which Lopez–Molina pleaded guilty, and the judgment entered pursuant to his guilty plea. Lopez–Molina responded, through counsel, with a variety of objections. He first objected to the admission of the documents because they were not filed or disclosed prior to the court-imposed deadline. Lopez–Molina then alleged that several documents were "inadmissible hearsay," were not made under oath, were not reliable, and were contradictory as to the amount of marijuana seized from the vehicle that Lopez–Molina was driving. Aside from making these objections, however, Lopez–Molina did not otherwise testify or present any evidence to refute the government's charges.

The IJ noted that Lopez–Molina offered nothing in the form of rebuttal evidence and concluded that the government had established that "there was sufficient evidence for the consular or Immigration officer to formulate a reason to believe that [Lopez–Molina] is a trafficker in controlled substances." The IJ ordered Lopez–Molina removed and the BIA summarily affirmed the IJ's order of deportation. Lopez–Molina appealed and the removal order has been stayed pending our review.

## II. DISCUSSION

■ The permanent rules of IIRIRA govern this case because removal proceedings were initiated after April 1, 1997. *See Castro–Baez v. Reno,* 217 F.3d 1057, 1058 n. 2 (9th Cir.2000). Under IIRIRA's permanent rules, this court's ability to review a final order of removal is limited by 8 U.S.C. § 1252(a)(2)(C).[2] This court determines for itself whether Lopez–Molina's case falls within the parameters of this jurisdiction-stripping provision. In other words, we have jurisdiction to consider our own jurisdiction. *See Cedano–Viera v. Ashcroft,* 324 F.3d 1062, 1064–65 (9th Cir. 2003).

In *Alarcon–Serrano v. INS,* 220 F.3d 1116 (9th Cir.2000), we held that in order to determine whether we lack jurisdiction to review a final order of removal under IIRIRA,[3] we may consider *only* whether the petitioner is "(i) an alien (ii) who is [removable] (iii) by reason of having committed a criminal offense listed in [§ 1182(a)(2) ]." *Id.* at 1119. Because there is no dispute that Lopez–Molina is an alien, the only viable question in this case is whether he is removable by reason of having "committed a criminal offense" listed in § 1182(a)(2). *Id.*

■ *Section 1182(a)(2) provides that an alien is inadmissible,* and thus removable,[4] if he has been convicted of certain

---

ment explicitly referenced Lopez–Molina's 1990 arrest and his 1996 conviction for Misprision of Felony.

**2.** Section 1252(a)(2)(C) provides in relevant part:

Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of *having committed a criminal offense* covered in [8 U.S.C. § 1182(a)(2) ]. . . .

8 U.S.C. § 1252(a)(2)(C) (emphasis added).

**3.** Although *Alarcon–Serrano* involved IIRIRA's transitional rules, it nonetheless controls the case at hand because the jurisdiction-stripping provision of IIRIRA's transitional rules, § 309(c)(4)(G), is essentially identical to § 1252(a)(2)(C).

**4.** 8 U.S.C. § 1227(a)(1)(A) provides that an alien who is inadmissible at the time of adjustment of status is deportable.

crimes, or if he has been convicted multiple times. *See* 8 U.S.C. § 1182(a)(2)(A) and (B). Section 1182(a)(2)(C), however, does not require a conviction in order for the alien to be deemed removable. *See Alarcon–Serrano*, 220 F.3d at 1119. The only requirement under § 1182(a)(2)(C) is that an immigration official has "reason to believe" that the alien is or has been involved in illicit drug trafficking. *See* 8 U.S.C. § 1182(a)(2)(C).[5] Therefore, the question we must decide is whether an alien, who is removable pursuant to § 1182(a)(2)(C) because an immigration official had *"reason to believe"* he was involved in illicit drug trafficking, qualifies as "an alien who is removable by reason of having *committed a criminal offense* covered in section 1182(a)(2)." *See* 8 U.S.C. § 1252(a)(2)(C). If we answer this question in the affirmative, then we lack jurisdiction to review Lopez–Molina's order. If we answer in the negative, then we must proceed to review the order on the merits.

We need not look far for our answer. We applied these very provisions in *Alarcon–Serrano*, and did so under virtually identical circumstances, before concluding that we lack jurisdiction to review a final removal order that was premised upon the "reason to believe" standard of § 1182(a)(2)(C). *See Alarcon–Serrano*, 220 F.3d at 1120. The petitioner in that case was a legal alien who had been apprehended while attempting to drive a car carrying 86 pounds of concealed marijuana across the California border. *Id.* at 1117. After his arrest, Alarcon–Serrano consistently denied knowledge of the concealed marijuana and was not convicted of any crime. *Id.* at 1118. Nonetheless, the government initiated removal proceedings

against him, alleging that he was removable pursuant to § 1182(a)(2)(C) because immigration officials had "reason to believe" that Alarcon–Serrano was a participant in controlled substance trafficking. *Id.* 1118–19. The IJ found that "circumstances correlate to show that [Alarcon–Serrano] colluded with a known drug trafficker to import in to the United States more than 80 pounds of marijuana." *Id.* The BIA agreed that Alarcon–Serrano's claims of ignorance lacked credibility and affirmed the IJ's removal order. *Id.*

When Alarcon–Serrano appealed the removal order to this court, the government argued—as it does in the case at hand—that because the removal order was premised upon the IJ's "reason to believe" that Alarcon–Serrano had been involved in illegal drug trafficking, Alarcon–Serrano qualified as an alien removable by reason of having "committed a criminal offense" covered in section 1182(a)(2), and thus, this court lacked jurisdiction under IIRIRA to review the removal order. The *Alarcon–Serrano* court ultimately agreed. Recognizing that it must first determine whether the case fell within the terms of IIRIRA's jurisdiction-stripping provision, it formulated the following analysis:

> Under [8 U.S.C. § 1182(a)(2)(C)], the only requirement is that an immigration officer 'knows or has reason to believe' that Alarcon–Serrano is an illicit trafficker in controlled substances or that Alarcon–Serrano has knowingly assisted, abetted, conspired with, or colluded with others in such illicit trafficking.
>
> The appropriate way of measuring whether the IJ and BIA had 'reason to believe' that Alarcon–Serrano was par-

---

**5.** Any alien who the consular officer or the Attorney General knows or *has reason to believe*—is or has been an illicit trafficker in any controlled substance or in any listed chemical . . . or is or has been a knowing aider, abettor,

assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, . . . is inadmissible.

8 U.S.C. § 1182(a)(2)(C) (emphasis added).

ticipating in drug trafficking is to determine whether substantial evidence supports such a conclusion.... Although to some extent this conflates review of the jurisdictional facts and review of the merits in this case, *this is the correct path to follow.*

*Id.* (citations omitted) (emphasis added). *Alarcon–Serrano* then ruled that substantial evidence did support the IJ's conclusion that the petitioner knew he was participating in drug trafficking and concluded:

> Because an immigration officer had ample reason to believe that Alarcon–Serrano knowingly engaged in drug trafficking, we lack jurisdiction to consider Alarcon–Serrano's petition for review pursuant to [IIRIRA's jurisdiction-stripping provision].

*Id.* at 1120.

The dissent in the current case argues, however, that we are not bound by *Alarcon–Serrano* because it did not "expressly address" the "tension" created between the jurisdiction-stripping provision's requirement that the alien *commit* a criminal offense covered in § 1182(a)(2), and § 1182(a)(2)(C)'s more "lenient" requirement that there need only be *reason to believe* that the alien committed a criminal offense. Instead, the dissent urges us to rely on *Pondoc Hernaez v. INS,* 244 F.3d 752 (9th Cir.2001), and concludes that despite *Alarcon–Serrano's* holding to the contrary, § 1252(a)(2)(C) does not bar our review of orders finding aliens removable pursuant to § 1182(a)(2)(C).

We are unpersuaded by the dissent's arguments for two reasons. First, it is not enough to simply point out that *Alarcon–Serrano* did not "expressly address" what the dissent views as "tension" between the requirements in § 1252(a)(2)(C) and § 1182(a)(2)(C). It is beyond dispute that *Alarcon–Serrano* not only applied these very same standards under identical cir-

cumstances, but explicitly outlined how such an analysis should proceed, stating that "this is the correct path to follow." *Alarcon–Serrano,* 220 F.3d at 1119. To refuse to follow these instructions when we are confronted with identical circumstances is the equivalent of overruling *Alarcon–Serrano,* a position that we are unwilling and, more importantly, unable to take. *See Montana v. Johnson,* 738 F.2d 1074, 1077 (9th Cir.1984) (holding that only this court sitting en banc may overrule a prior decision by this court).

Second, *Pondoc Hernaez,* though informative, is hardly controlling. *Pondoc Hernaez* does not address § 1182(a)(2)(C) or its "reason to believe" standard; rather, it was concerned with 8 U.S.C. § 1227(a)(2)(B)(ii), which provides that "[a]ny alien who is ... a drug abuser or addict is deportable." *See Pondoc Hernaez,* 244 F.3d at 756. Not only did *Pondoc Hernaez* analyze the interplay between IIRIRA's jurisdiction-stripping provision and an altogether different statute, but its analysis occurred in a context that is not relevant to the case at hand. In fact, *Pondoc Hernaez* cited *Alarcon–Serrano* with *approval* before stating that it was *not* addressing the issue already decided in *Alarcon–Serrano* and currently before this court:

> Under [IIRIRA's jurisdiction-stripping provision], Petitioner must have committed a 'criminal offense' to divest this court of jurisdiction. As the [government] argues, under *Alarcon–Serrano,* such a criminal offense could be proven without a conviction. But the issue here is the more fundamental question whether drug addiction is actually a 'criminal offense.'

*Id.* at 757.

In sum, *Pondoc Hernaez* never addressed what would or would not constitute sufficient proof that an alien had "committed a criminal offense." Although

*Pondoc Hernaez* concluded that this court was not stripped of jurisdiction to review a removal order, it did so because it ruled that drug addiction was not a "criminal offense." Such a holding does not apply to the case at hand and fails to convince us that we may now disregard the explicit analysis demanded by *Alarcon–Serrano.*

■ For the foregoing reasons, we hold that in order to decide the case at hand, we are obligated to adhere to the analysis applied by *Alarcon–Serrano* to this identical issue under identical circumstances. Accordingly, we must first determine whether "reasonable, substantial, and probative evidence" supports the IJ's "reason to believe" that Lopez–Molina knew he was participating in illicit drug trafficking. *Id.* at 1119 (citing *Hamid v. INS,* 538 F.2d 1389, 1390–91 (9th Cir.1976)). If substantial evidence does support the IJ's "reason to believe," then Lopez–Molina also qualifies as "an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2)." 8 U.S.C. § 1252(a)(2)(C).

Upon a review of the record, we conclude that there is reasonable, substantial, and probative evidence for an immigration official to have "reason to believe" that Lopez–Molina knowingly participated in illicit drug trafficking. The government submitted numerous documents establishing Lopez–Molina's role in transporting a large load of marijuana. These documents included a DPS report describing the police surveillance of Lopez–Molina prior to his 1990 arrest-surveillance which witnessed suspicious meetings between Lopez–Molina and other suspects (several of whom were arrested with several thousand dollars in cash). The DPS report then details Lopez–Molina's attempt to escape when police stopped the vehicle that he was driving, and describes the subsequent discovery of 147 pounds of marijuana inside that vehicle's trunk. In addition, the government submitted Lopez–Molina's guilty plea to a charge that he failed to disclose to authorities his "knowledge" of a conspiracy to distribute marijuana. In the face of this evidence, Lopez–Molina neither testified nor submitted evidence to rebut the facts set out in the DPS report and other documents. Instead, Lopez–Molina's counsel merely objected to the DPS report on numerous evidentiary and constitutional grounds.[6]

*Alarcon–Serrano* held that in light of the evidence that Alarcon–Serrano was arrested with marijuana concealed in his car, his inadmissibility pursuant to § 1182(a)(2)(C) was "undoubtedly supported by substantial probative evidence." *Id.* at 1120. We similarly hold that evidence of Lopez–Molina's attempted escape and subsequent arrest for driving a car containing 147 pounds of concealed marijuana undoubtedly supports a "reason to believe" that he was involved in drug trafficking. Because Lopez–Molina is inadmissible under § 1182(a)(2)(C), he meets § 1252(a)(2)(C)'s definition of "an alien ... removable by reason of having committed a criminal offense covered in section 1182(a)(2)." 8 U.S.C. § 1252(a)(2)(C). *See also Alarcon–Serrano,* 220 F.3d at 1119–20.

---

6. Because Lopez–Molina's additional constitutional and evidentiary claims are also without merit, the position that the dissent advocates makes no practical difference in this case. Under the dissent's analysis, we would retain jurisdiction and proceed to review Lopez–Molina's claim on the merits only to engage in an identical analysis. *See Hamid,* 538 F.2d at 1390–91 (conducting a review on the merits by applying substantial evidence review to an IJ's conclusion that there was reason to believe that alien was an illicit drug trafficker). Therefore, the difference between the analysis formulated by *Alarcon–Serrano* and the approach suggested by the dissent is that the former would require us to dismiss the petition for review, while the latter would have us deny the petition.

## III. CONCLUSION

There is reasonable, substantial, and probative evidence for the IJ to have "reason to believe" that Lopez–Molina knowingly participated in the illicit trafficking of drugs. He is therefore removable pursuant to § 1182(a)(2)(C) and this court is barred from reviewing that removal order pursuant to § 1252(a)(2)(C). Furthermore, because we lack jurisdiction to review this order, we are similarly precluded from direct review of his evidentiary and due process claims. *See e.g., Cedano–Viera v. Ashcroft*, 324 F.3d 1062 (9th Cir. 2003) (holding that when we lack jurisdiction to review an alien's removal order, we also lack jurisdiction to review due process and equal protection claims); *Flores–Miramontes v. INS*, 212 F.3d 1133, 1143 (9th Cir.2000) (holding that after petitioner conceded both that he was an alien and that he committed a trafficking crime, we have no further jurisdiction to review petitioner's due process and access to the courts claims).

**PETITION FOR REVIEW DISMISSED.**

TASHIMA, Circuit Judge, dissenting:

The threshold issue we must decide is whether 8 U.S.C. § 1252(a)(2)(C),[1] the jurisdiction-stripping provision of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which deprives appellate courts of jurisdiction to review orders of removal where the alien is removable by reason of having "committed a criminal offense," applies when the alien is found removable on the ground that an immigration official has "reason to believe" that the alien is an illicit drug trafficker. *See* 8 U.S.C. § 1182(a)(2)(C).[2] Because I disagree that the jurisdiction-stripping provision applies in this case, I respectfully dissent.

As a first principle, the Supreme Court has instructed that jurisdiction-stripping legislation is to be strictly construed. *INS v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (noting the "strong presumption in favor of judicial review of administrative action"). As the majority recognizes, we have jurisdiction to determine whether the jurisdiction-stripping provision of § 1252(a)(2)(C) applies. *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 879 (9th Cir.2003). In most cases the inquiry is relatively simple. All but two of the statutes referenced in § 1252(a)(2)(C) require that the alien either be convicted of a criminal offense or admit to having committed acts that constitute the essential elements of a criminal offense. *See* 8 U.S.C. §§ 1182(a)(2)(A), (B), 1227(a)(2)(A)(ii), (A)(iii), (B), (C), and (D). Where the alien is ordered removed pursuant to any of those statutes, the court need only determine "whether an alien in fact committed acts sufficient to trigger" the jurisdiction-stripping provision. *See Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1212 (9th Cir.2002).[3]

---

**1.** [N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having *committed* a criminal offense covered in [8 U.S.C. § 1182(a)(2)].
8 U.S.C. § 1252(a)(2)(C) (emphasis added).

**2.** Any alien who the consular officer or the Attorney General knows or *has reason to believe*—is or has been an illicit trafficker in any controlled substance or in any listed chemical . . . or is or has been a knowing aider, abettor,

assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so . . . is inadmissible.

8 U.S.C. § 1182(a)(2)(C) (emphasis added).

**3.** The other two statutes identified in § 1252(a)(2)(C) are 8 U.S.C. § 1182(a)(2)(C) (the statute under which Lopez–Molina was found inadmissible), and § 1227(a)(2)(B)(ii) ("Any alien who is, or at any time after admis-

In order to be removable under § 1182(a)(2)(C), however, the alien need not have committed, or be found to have committed, a criminal offense. *See Hamid v. U.S. INS*, 538 F.2d 1389, 1391 (9th Cir.1976) ("[T]he immigration officer need not know that an individual is or has been a trafficker in order to exclude that person [pursuant to former 8 U.S.C. § 1182(a)(23), the predecessor to § 1182(a)(2)(C) ]. The officer is justified in acting if he has 'reason to believe' that an individual is so engaged."). In this case, the INS alleged that Lopez–Molina was removable pursuant to § 1227(a)(1)(A) because, at the time he applied for adjustment of status, he was inadmissible under § 1182(a)(2)(C) because he had "engaged in unlawful activities related to the sale and trafficking of … marijuana." The immigration judge ordered him removed because there was "sufficient evidence for the consular or immigration officer to formulate a reason to believe that he is a trafficker in controlled substances."

In *Alarcon–Serrano v. INS*, 220 F.3d 1116 (9th Cir.2000), an alien was ordered removed under § 1182(a)(2)(C) on the ground that there was "reason to believe" that he was an illicit drug trafficker. *Id.* at 1118. In that case, we assumed that IIRIRA § 309(c)(4)(G),[4] which deprived the court of appellate jurisdiction where the alien was "inadmissible or deportable by reason of having committed a criminal offense" covered in § 1182(a)(2), applied to aliens ordered deported pursuant to § 1182(a)(2)(C), so long as substantial evidence supported that there was "reason to believe" that the alien committed a criminal offense. *See id.* at 1119 ("The appropriate way of measuring whether the IJ and BIA had 'reason to believe' that Alar-

con–Serrano knew he was participating in drug trafficking is to determine whether substantial evidence supports such a conclusion."). Because the immigration officer had "ample reason" to suspect that the petitioner was a drug trafficker, we concluded that we lacked jurisdiction under IIRIRA § 309(c)(4)(G). *Id.* at 1120. In *Alarcon–Serrano*, however, we did not confront or expressly address the issue created by the tension between the requirement under § 309(c)(4)(G) that the alien *commit* a criminal offense, and the more lenient requirement of § 1182(a)(2)(C) that there need only be *reason to* believe that the alien committed a criminal offense.

In *Hernaez v. INS*, 244 F.3d 752 (9th Cir.2001), however, we addressed a similar issue. In that case, an alien was found deportable on the ground that he was a drug addict. *Id.* at 754; *see* 8 U.S.C. § 1227(a)(2)(B)(ii) ("Any alien who is, or at any time after admission has been, a drug abuser or addict is deportable."). Although IIRIRA § 309(c)(4)(G) specifically references deportation orders issued pursuant to § 1227(a)(2)(B), we held that it did not apply to such deportation orders because the conduct described in § 1227(a)(2)(B)—drug addiction—was not a "criminal offense." *Id.* at 757. We reasoned that the language of the jurisdiction-stripping provision, rather than the list of deportation orders it purported to cover, dictated its scope. *Id.* ("The language of the transition rules that removes this court's jurisdiction is different from the language of the sections of the INA establishing grounds for deportation. Under IIRIRA § 309(c)(4)(G), Petitioner must

sion has been, a drug abuser or addict is deportable.").

**4.** IIRIRA § 309(c)(4)(G), the jurisdiction-stripping provision of IIRIRA's transitional rules, is essentially identical to § 1252(a)(2)(C).

have committed a 'criminal offense' to divest this court of jurisdiction.").

*Hernaez* dictates the proper analysis in this case.[5]  Whereas *Alarcon–Serrano* assumed that we lacked jurisdiction simply because § 1182(a)(2) was referenced in the jurisdiction-stripping statute, *Hernaez* was faithful to the language of the jurisdiction-stripping statute itself.  *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (noting a "strong presumption that Congress expresses its intent through the language it chooses").  *Hernaez's* approach is also consistent with the principle that jurisdiction-stripping provisions should be narrowly construed, *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 494, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), and, accordingly, that courts should not cede jurisdiction to review administrative decisions unless Congress specifically so instructs, *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 671, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986); *St. Cyr*, 533 U.S. at 298, 121 S.Ct. 2271.

Applying the reasoning of *Hernaez*, I conclude that § 1252(a)(2)(C), by its express terms, applies only to removal orders in which the alien is ordered removed "by reason of having *committed* a criminal offense." [6]  Because § 1182(a)(2)(C) does not require that an alien commit a criminal offense in order to be found inadmissible or removable, § 1252(a)(2)(C) does not bar our review of orders finding aliens removable pursuant to that statute.

Because no finding has been made in this case that Lopez–Molina *committed* a criminal offense, I would conclude that we have jurisdiction and reach the merits of Lopez–Molina's petition.  Accordingly, I respectfully dissent from the majority's holding that we lack jurisdiction to review this petition.

---

**5.** The majority's assertion, Maj. op. at 1211, that *Hernaez* "cited *Alarcon–Serrano* with *approval*" is something of an overstatement.  In fact, all that *Hernaez* did was to observe that "[*a* ]*s the INS argues*, under *Alarcon–Serrano*, such a criminal offense could be proven without a conviction."  *Hernaez*, 244 F.3d at 757 (emphasis added).  Stating the government's position is hardly an approval of the same.

**6.** Neither party has argued that the word "committed," as used in § 1252(a)(2)(C), is ambiguous.  *See Coronado–Durazo v. INS*, 123 F.3d 1322, 1324 (9th Cir.1997) ("Where the plain meaning of a provision is unambiguous that meaning is controlling." (quoting *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989))).