**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAVITTAR SINGH, *Petitioner*, v. LORETTA E. LYNCH, Attorney General, *Respondent*. | No. 08-74212 Agency No. A098-501-520 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 7, 2014[*]
San Francisco California

Filed September 21, 2015

Before: Sidney R. Thomas, Chief Judge, and Diarmuid F.
O'Scannlain and M. Margaret McKeown, Circuit Judges.

Opinion by Judge O'Scannlain
Partial Concurrence and Partial Dissent by Chief Judge
Thomas

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

The panel denied a petition for review of the Board of Immigration Appeals' denial of asylum, withholding of removal and Convention Against Torture protection on adverse credibility grounds.

The panel held that the REAL ID Act permits background documents to serve as the sole basis for an adverse credibility determination. The panel explained that the immigration judge permissibly relied on record evidence, including an Amnesty International report, indicating that the armed Sikh militancy in India ended in the 1990s, to conclude that petitioner's claim of being attacked by Sikh militants in 2005 and 2006 was not plausible.

Concurring in part and dissenting in part, Chief Judge Thomas agreed with the majority that under the REAL ID Act, an IJ's adverse credibility determination may be supported exclusively by background evidence in the record, but he dissented from the majority's decision to uphold the agency's adverse credibility determination, because the agency mischaracterized the background evidence and did not consider the totality of the circumstances.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Monica Ganjoo, Ganjoo Law Offices, San Francisco, CA, filed the brief for petitioner.

Tony West, Assistant Attorney General, U.S. Department of Justice, Civil Division, Washington, DC, filed the brief for the respondent. With him on the brief were Stephen J. Flynn, Assistant Director, and Janette L. Allen, Attorney, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide, in this asylum case under the REAL ID Act, whether an Immigration Judge's adverse credibility determination may be supported exclusively by background evidence in the record.

I

Pavittar Singh, a native and citizen of India, entered the United States on or about January 4, 2007, as a nonimmigrant visitor, with authorization to remain in the United States for six months. However, on April 19, 2007, the Department of Homeland Security served Singh with a Notice to Appear, charging him as removable for failure to comply with the conditions of his nonimmigrant status. Specifically, Singh was charged as non-compliant because he was employed for wages at a convenience store without authorization of Immigration and Customs Enforcement ("ICE"). Singh then

sought relief from removal by applying for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

## A

In due course, Singh appeared before an Immigration Judge ("IJ") and testified that he had suffered persecution on account of his membership in the Nirankari sect of the Sikh faith. He asserted that on January 16, 1998, terrorists entered his family's shop in India, derided his Nirankari beliefs, and demanded money. Additionally, Singh testified that after he reported this incident, the police refused to investigate and instead accused him of harboring Sikh separatists. Singh claimed he suffered additional police harassment when, on January 19, 2005, he was arrested, accused of harboring terrorists at his wedding, and beaten while in custody. Singh also claimed that on October 16, 2006, he was yet again accosted by "Sikh terrorists," who took his property and threatened to kill him if he supported the Nirankari mission. He testified that a few days later the police again arrested him, accused him of supporting "Sikh terrorists," and beat him.

## B

However, the IJ found Singh's testimony not credible and denied his applications for relief. While acknowledging that Singh testified consistently, the IJ relied on background evidence in the record to conclude that his testimony was implausible. The IJ noted that an Amnesty International report submitted by Singh not only failed to "support his claim that the armed opposition continues to operate," but also, by showing that armed militants were no longer active,

undermined his allegation that such militants recently attacked him. The IJ also found the reports submitted by the Government further suggested that militant activity had "ended years ago." Thus, she found, Singh's claim that he was attacked by Sikh militants in 2005 and 2006 was not plausible.

The Board of Immigration Appeals ("BIA") dismissed Singh's appeal from the IJ's decision, agreeing with her that his "account is implausible because the documentary evidence demonstrates that the armed opposition in Punjab ended in the 1990's." Noting that the BIA must defer to IJ credibility findings "unless they are clearly erroneous" and that "[i]mplausible testimony can support an adverse credibility finding," the Board agreed with the IJ's finding that Singh was not credible.

## II

The only issue presented on appeal is whether the IJ's adverse credibility determination was supported by substantial evidence.

## A

The standard of review of BIA determinations is well settled. As we have explained, "[w]hen the BIA conducts its own review of the evidence and law rather than adopting the IJ's decision, our review 'is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted.'" *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010) (quoting *Hosseini v. Gonzalez*, 471 F.3d 953, 957 (9th Cir. 2006)). However, "when, as here, the BIA's 'phrasing seems in part to suggest that it did conduct an independent

review of the record,' but the BIA's analysis on the relevant issues is confined to a 'simple statement of a conclusion,' we 'also look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion.'" *Id*. (quoting *Avetova-Elisseva v. I.N.S.*, 213 F.3d 1192, 1197 (9th Cir. 2000)).

Credibility determinations are findings of fact, which are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Rizk v. Holder*, 629 F.3d 1083, 1087 (9th Cir. 2011); *Singh-Kaur v. I.N.S.*, 183 F.3d 1147, 1149–50 (9th Cir. 1999). Under 8 U.S.C. § 1252, our task "is to determine whether there is substantial evidence to support the BIA's finding, not to substitute an analysis of which side in the factual dispute we find more persuasive." *Molina-Morales v. I.N.S.*, 237 F.3d 1048, 1050 (9th Cir. 2001) (quoting *Marcu v. I.N.S.*, 147 F.3d 1078, 1082 (9th Cir. 1998)). Thus, a credibility determination will only be reversed if "the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Rizk*, 629 F.3d at 1087 (quoting *I.N.S. v. Elias–Zacarias*, 502 U.S. 478, 481 n.1 (1992)) (alterations in original).

Singh concedes that because he filed his application after May 11, 2005, the REAL ID Act governs the determination of his credibility. *See Shrestha*, 590 F.3d at 1039.

## B

Singh asserts that the adverse credibility determination is not supported by substantial evidence, because under the REAL ID Act his specific testimony cannot be discredited solely by reliance on background documents. Whether the REAL ID Act permits such background documents to serve

as the sole basis for an adverse credibility finding appears to be a question of first impression. However, it is easily resolved by the clear language of the Act itself, which forecloses Singh's argument.

1

The two cases Singh relies on for support—*Zheng v. Ashcroft*, 397 F.3d 1139 (9th Cir. 2005), and *Singh v. Gonzales*, 439 F.3d 1100 (9th Cir. 2006), *overruled on other grounds by Maldonado v. Lynch*, 786 F.3d 1155, 1163–64 (9th Cir. 2015) (en banc)—are pre-REAL ID Act cases that do not consider the Act's significant restriction of appellate review of credibility determinations.[1] *See Bingxu Jin v. Holder*, 748 F.3d 959, 964 (9th Cir. 2014) ("The REAL ID Act 'significantly restricted' appellate review of adverse credibility findings," and "'only the most extraordinary

---

[1] Indeed, some of our cases hold that background evidence can support adverse credibility determinations even in pre-REAL ID Act cases. Admittedly, Singh is correct that *Singh* and *Zheng* hold that "[w]hile an IJ may use a Department of State Report to discredit a generalized statement about a country, it may not be used to discredit specific testimony regarding a petitioner's experience." *Singh*, 439 F.3d at 1110 (citing *Zheng*, 397 F.3d at 1143–44).

However, other pre-REAL ID Act precedent has addressed this question and concluded that country reports *are* an acceptable basis for implausibility determinations. In *Jibril v. Gonzales*, we stated that "a finding made by an IJ that a petitioner's testimony is implausible *given the evidence in a Country Report* or other objective evidence in the record is accorded deference." 423 F.3d 1129, 1135 (9th Cir. 2005) (emphasis added); *see also Jie Cui v. Holder*, 712 F.3d 1332, 1338 (9th Cir. 2013) (citing *Jibril* for the proposition that "testimony that is implausible *in light of the background evidence* can support an adverse credibility determination" (emphasis added)); *Don v. Gonzales*, 476 F.3d 738, 743 (9th Cir. 2007) (same).

circumstances will justify overturning an adverse credibility determination.'"   (quoting *Shrestha*, 590 F.3d at 1041)); *Jibril*, 423 F.3d at 1138 n.1; *Kaur v. Gonzales*, 418 F.3d 1061, 1064 n.1 (9th Cir. 2005); *see also Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165–68 (2d Cir. 2008) (per curiam) (explaining that the "REAL ID Act freed an IJ" from the various requirements courts of appeals imposed on credibility determinations).

2

Moreover, the REAL ID Act explicitly allows the BIA and IJ to base their credibility determinations on background evidence in the record.  "Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on," among other things, "the inherent plausibility of [Singh's] account" and "the consistency of [Singh's] statements with other evidence of record (including the reports of the Department of State on country conditions) . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of [Singh's] claim."  8 U.S.C. § 1158(b)(1)(B)(iii); *cf. Angov v. Lynch*, 788 F.3d 893, 904 (9th Cir. 2013) (explaining that this Court and the BIA permissibly rely upon State Department country reports "all the time" (citing 8 U.S.C. § 1158(b)(1)(B)(iii))).

The IJ thus acted within the confines of the REAL ID Act by considering the totality of the circumstances and basing her credibility determination on the inherent implausibility of Singh's account and its inconsistency with record evidence, including the Amnesty International report.   The IJ considered evidence submitted by Singh and the Government and found such evidence did "not support [Singh's] claim that

the armed opposition continues to operate." She noted that the Amnesty International report affirmatively indicated that the armed Sikh militancy ended in the 1990s. Ultimately, based on Singh's testimony and the documents submitted by both Singh and the Government, the IJ found implausible Singh's account that he was attacked by Sikh militants. The BIA similarly concluded that Singh's account was rendered implausible by the documentary evidence that "demonstrates that the armed opposition in Punjab ended in the 1990's."[2]

Given the language of the REAL ID Act, the IJ's finding and the BIA's conclusion of implausibility based on record evidence is permissible.[3]

---

[2] The BIA based its plausibility finding on two separate factors: (1) the lack of militant activity in the Punjab region after the mid-1990s; and (2) the Indian government's focus on high-level activists, as opposed to lower-profile or inactive Sikh members such as Singh. The dissent focuses on the second factor.

We offer two points in response. *First*, because record evidence supported the IJ and BIA on the first finding, the second factor is not dispositive. *See Rizk*, 629 F.3d at 1087 (quoting *Wang v. I.N.S.*, 352 F.3d 1250, 1259 (9th Cir. 2003)). *Second*, while the dissent cites experts who indicated that even low-level activists were in danger, other background evidence indicated that "several experts have suggested that only those considered by police to be high-profile militants are at risk." Because there is evidence to support either conclusion, we cannot say that the record compels the conclusion that inactive Sikh members were under police threat. *See id.* (quoting *Elias–Zacarias*, 502 U.S. at 481 n.1).

[3] Though unmentioned by the parties, the Eleventh Circuit has considered the question of whether adverse credibility determinations can be based solely on background evidence and determined that they cannot, contrary to our conclusion here. In *Xiu Ying Wu v. U.S. Att'y Gen.*, 712 F.3d 486 (11th Cir. 2013), a case interpreting the REAL ID Act, the court concluded that an IJ cannot rely solely on country reports in making

## C

Our precedent also forecloses Singh's argument that the BIA's decision was based on speculation.

Though Singh is correct that an adverse credibility determination cannot be based on complete speculation and conjecture, here the IJ and BIA supported the determination with specific citations to record evidence. *See* Part II.A., *supra*; *see also Shrestha*, 590 F.3d at 1042 (requiring "that the IJ state explicitly the factors supporting his or her adverse credibility determination" and avoid "[b]oilerplate opinions" that "are devoid of statements that evidence an individualized review of the petitioner's contentions and circumstances"

---

a credibility determination, absent a finding as to "demeanor, the consistency of [the petitioner's] statements, or some other individualized reason for questioning her credibility." *Id* at 496.

However, the Eleventh Circuit's reasoning is unpersuasive because it fails to account for the specific language of the REAL ID Act. The *Xiu Ying Wu* panel concluded it could not give State Department reports "dispositive power" because doing so would "vitiate the individualized determination" required in adverse credibility decisions. *Id*. Yet, as noted above, the REAL ID Act indeed gives such reports "dispositive power"; that is the unavoidable effect of allowing a "trier of fact" to "base a credibility determination" on the consistency of an applicant's claims "with other evidence of record (including the reports of the Department of State on country conditions) . . . without regard to whether [such] inconsistency . . . goes to the heart of the applicants claim." 8 U.S.C. §1158(b)(1)(B)(iii).

Further, while *Xiu Ying Wu* claims that using record evidence as grounds for finding lack of credibility "would vitiate the individualized determination" of petitioners' claims, 712 F.3d at 496, such concern is unfounded in light of our decision in *Shrestha*. *See Shrestha*, 590 F.3d at 1042.

(quoting *Castillo v. I.N.S.*, 951 F.2d 1117, 1121 (9th Cir. 1991)); *cf. Yan Xia Zhu v. Mukasey*, 537 F.3d 1034, 1039–40 (9th Cir. 2008) (concluding that an IJ's implausibility determination was impermissible when based on the IJ's pure speculation, rather than any record evidence).

Further, the BIA did not violate our command that its "analysis must be reasonable as a whole," that its decision must be based on more than "utterly 'trivial inconsistencies,'" and that it "give 'specific and cogent reasons supporting [its] adverse credibility determination.'" *Bingxu Jin*, 748 F.3d at 965 (quoting *Shrestha*, 748 F.3d at 1042).

Here, the BIA explicitly discussed Singh's testimony regarding the alleged attacks by terrorists and harassment by the police and explained why it found that such specific testimony was undermined by the evidence in the record. Thus, it sufficiently noted the factors supporting the IJ's finding, and evidenced its individualized review of Singh's case.

Pursuant to our precedent, we are satisfied that the adverse credibility determination was properly explained and supported by substantial evidence.

### III

The BIA correctly concluded that because Singh failed to qualify for asylum, he necessarily fails to satisfy the more stringent standard for withholding of removal. *See Alvarez-Santos v. I.N.S.*, 332 F.3d 1245, 1255 (9th Cir. 2003).

Substantial evidence also supports the BIA's conclusion that it was not "more likely than not" that Singh would be

tortured if he were removed to India. We do not permit an IJ to use "a negative credibility determination in the asylum context to wash over the [CAT] claim[,] especially when the prior adverse credibility determination is not necessarily significant" to the torture claim. *Kamalthas v. I.N.S.*, 251 F.3d 1279, 1284 (9th Cir. 2001) (quoting *Mansour v. I.N.S.*, 230 F.3d 902, 908 (7th Cir. 2000)). However, when a petitioner's "claims under the [CAT] are based on the same statements . . . that the BIA determined to be not credible" in the asylum context, the agency may rely upon the same credibility determination in denying both the asylum and CAT claims. *Farah v. Ashcroft*, 348 F.3d 1153, 1157 (9th Cir. 2003).

In this case, Singh's claim under the CAT is based on the same statements he made regarding his claims for asylum and withholding of removal. Thus, it was proper for the IJ and the BIA to rely on the same adverse credibility determination in denying all of his claims.

## IV

Accordingly, Singh's petition for review is **DENIED**.

---

THOMAS, Chief Judge, concurring in part and dissenting in part:

I agree with the majority that under the REAL ID Act, an Immigration Judge's adverse credibility determination may be supported exclusively by background evidence in the record. However, I respectfully dissent from the majority's decision to uphold the agency's adverse credibility

determination. The IJ and BIA mischaracterized the background evidence and did not "consider the totality of the circumstances" as required by 8 U.S.C. § 1158(b)(1)(B)(iii). I would grant Singh's petition for review.

I

I agree with the majority that under the Real ID Act, a petitioner's specific testimony may be discredited solely by background evidence in the record. However, an IJ is still required to consider the totality of the circumstances and to make an individualized credibility determination that rests on "specific and cogent reasons." 8 U.S.C. § 1158(b)(1)(B)(iii); *Shrestha*, 590 F.3d at 1042 ("The REAL ID Act did not strip us of our ability to rely on the institutional tools that we have developed, such as the requirement that an agency provide specific and cogent reasons supporting an adverse credibility determination, to aid our review."). As a result, it is a rare case that an IJ is able to rest an adverse credibility determination on background evidence alone without violating the other requirements imposed by § 1158(b)(1)(B)(iii) and by controlling precedent. Indeed, this case offers a useful illustration of the perils of relying too heavily on broad generalizations contained in static country reports when refuting an asylum applicant's specific testimony.

II

Turning to the specifics of this case, substantial evidence does not support the agency's adverse credibility determination. The background evidence in the record does not discredit Singh's testimony that he was detained and

beaten by the police in 2005 and 2006 and targeted by four men dressed as Sikh militants in 2006.

The IJ and BIA suggest that Singh's testimony that he was detained and interrogated by the Punjab police is not credible because this background evidence indicates the Indian government is concerned only with arresting high-level Sikh militants.    This is not an accurate characterization of the record.  A 2003 Bureau of Citizenship and Immigration Services report submitted into evidence by the government provides that while some experts believe the Punjab police will track down only high-profile suspects who have relocated to another province in India, others believe that "any Sikh who has been implicated in political militancy would be at risk anywhere in India."  This report indicates that it remains an open question whether the police in Punjab are concerned only with high-profile suspects.

Moreover, the same report corroborates Singh's testimony.  It cites an expert on religious militancy who noted that while "Punjab police no longer systematically persecute Sikhs simply for holding [pro-Sikh independence] views . . . individual Sikhs are 'probably targeted' at times by local police because of their actual or suspected [pro-Sikh independence] advocacy, even though high-level officials no longer see such views as a threat."  The expert further noted that "[t]here is still widespread harassment of anyone who expresses separatist sympathies" and that reports of police detention and physical abuse "seemed plausible given conditions in Punjab."

The IJ and BIA further suggest that Singh's testimony that he was harassed by Sikh militants in 2006 is not credible because the background evidence in the record indicates that

Sikh militant activity ended in the 1990s. The background evidence does indicate that widespread, organized activity by militant Sikhs ended in the 1990s. But it is still plausible that Singh was harassed by former Sikh militants who independently engage in criminal activity and who continue to rob and terrorize the population. Singh testified that he was robbed by four men dressed like Sikh terrorists who warned him to stop supporting the Nirankari sect. This testimony is not necessarily inconsistent with reports that the majority of armed opposition groups in Punjab are no longer active.

Even if armed resistance is no longer widespread and pro-independence Sikhs are no longer the primary targets of police brutality in Punjab, it is not implausible that at least some former militants continue to engage in violent criminal behavior and at least some Sikhs continue to be harassed by the police for their perceived affiliation with the resistance movement. Indeed, it is arguably more implausible that—after more than a decade of conflict—the militants would suddenly cease all criminal activity and the police would cease all persecution of Sikh activists.

The IJ and BIA "cherry-pick[ed] solely facts favoring an adverse credibility determination while ignoring facts that undermine[d] that result." *Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010). As a result, the IJ's adverse credibility determination is not supported by substantial evidence.

For these reasons, I concur in part and dissent in part.