**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AMAR JIT,

　　　　　　　Petitioner,

v.

WILLIAM P. BARR, Attorney General,

　　　　　　　Respondent.

No.　15-73695

Agency No. A089-735-059

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 8, 2019
Pasadena, California

Before: KLEINFELD, NGUYEN, and R. NELSON, Circuit Judges.

Amar Jit, a citizen of India, petitions for review of a final order of the Board

of Immigration Appeals ("BIA") denying Jit's application for asylum, withholding

of removal, and relief under the Convention Against Torture.

---

[*]　　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

We have jurisdiction pursuant to 8 U.S.C. § 1252. We grant Jit's petition and remand to the BIA for further proceedings on Jit's asylum, withholding of removal, and Convention Against Torture claims. See INS v. Orlando Ventura, 537 U.S. 12, 18 (2002) (per curiam).

We review the immigration judge ("IJ") and BIA's adverse credibility determination for substantial evidence. Hu v. Holder, 652 F.3d 1011, 1016 (9th Cir. 2011). "'Substantial evidence' means the BIA's determination is supported by 'reasonable, substantial, and probative evidence on the record.'" Haile v. Holder, 658 F.3d 1122, 1131 (9th Cir. 2011) (quoting Morales v. Gonzales, 478 F.3d 972, 983 (9th Cir. 2007)). Even after the REAL ID Act, the IJ's "reasons must consist of something more than '[t]rivial inconsistencies that under the total circumstances have no bearing on a petitioner's veracity.'" Ren v. Holder, 648 F.3d 1079, 1085 (9th Cir. 2011) (alteration in original) (quoting Shrestha v. Holder, 590 F.3d 1034, 1044 (9th Cir. 2010)).

The BIA issued a reasoned opinion, so we review "the reasons explicitly identified by the BIA" and "look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion." Lai v. Holder, 773 F.3d 966, 970 (9th Cir. 2014)

2

(quoting Tekle v. Mukasey, 533 F.3d 1044, 1051 (9th Cir. 2008)). We hold that the adverse credibility determination was not supported by substantial evidence.

**1.** The first reason for the adverse credibility determination—that Jit went to see a pediatrician or child specialist, Dr. Paul—did not support the adverse credibility finding. The IJ considered Jit's "inability to provide what this court views to be an adequate explanation regarding why he was treated by a pediatrician" in making the adverse credibility determination. The BIA reasoned that "[w]hen asked why he was receiving care from a child specialist," Jit did not give an adequate explanation. However, the record indicates that he did not know what needed explanation. Jit explained (and the BIA acknowledged) that he saw Dr. Paul because Dr. Paul was his family doctor. There is no reason why Jit could not have seen a pediatrician, his family doctor, for his "superficial abrasions." That Jit saw a pediatrician furnishes no evidence for an adverse credibility determination. Even in the United States patients are often seen by physicians for problems outside their specialties, and there is no reason to treat going to the family doctor, whose practice focuses on children, as suggestive of lying.

**2.** The BIA and IJ also based the adverse credibility determination on the fact that Jit's written declaration stated "[o]n July 27, 2007, police visited my home, arresting me and taking me to local jail for custodial interrogation, indicating that I had ties with Akali Dal militants." In his oral testimony, he testified that the police never specified the terrorist group with which he was accused of being involved.

This appears not to have been an inconsistency. Jit's responses to questioning indicate that Jit was using the terms "Akali Dal" interchangeably with "terrorist." In response to the question of who was accusing his religious leader of improprieties, Jit responded, "[t]he Akali Dal terrorist party." When the government lawyer read from Jit's declaration the statement that the police had arrested him and taken him "to local jail for custodial interrogation, indicating that I had ties with Akali Dal militants," Jit responded, "[t]hey had accused me of that." Her next question was, "[t]hey accused you of what, sir?" and he responded, "[t]hat you have relations with the terrorists." She asked, "[w]hich terrorists did they accuse you [of] hav[ing] relations with?" and he responded, "[t]hey just said that you had relations with the terrorists." The fact that Jit responded to back-to-back questioning about being associated with the "Akali Dal" and "terrorists" by

indicating that he had been accused of associating with them suggests that he did not see a difference in the terms. When asked to explain why his statements were inconsistent, Jit responded, "I don't know," evidently not seeing a difference between the words "Akali Dal" and "terrorist."

Jit's testimony consistently conveyed the message that he had been accused of associating with terrorists. When the government lawyer asked Jit "[a]nd why does your statement specify Akali Dal militants," his response was, "[i]t was an accusation by the police. I don't know." While, in other parts of his testimony, he referred to the police as being associated with the Akali Dal, and said that they beat him "[b]ecause they also support the Akalis," he made clear that there are different groups of Akalis, some of whom he viewed as "terrorists." He stated, "[w]ell, some Akalis are terrorists, some Akalis . . . are in the ruling party and they're politicians and some have a different separate party." Because Jit conveyed a consistent message–that the police detained him because he was falsely accused of being associated with Akali Dal terrorists–it is hard to see what was inconsistent comparing his written declaration with his testimony. Any putative inconsistency was "trivial" enough that it could not properly form the basis of an adverse credibility determination. See Ren, 648 F.3d at 1084.

5

**3.** The final reason for the adverse credibility determination was that following Jit's release from custody, he started living in Jalandhar with relatives, which is 28 kilometers (about 17 miles) away from his home in Nakodar. The IJ took issue with the fact that Jit did not include this in his written declaration. However, "mere omission of details is insufficient to uphold an adverse credibility finding." Lai, 773 F.3d at 971 (quoting Singh v. Gonzales, 403 F.3d 1081, 1085 (9th Cir. 2005)). While the BIA reasoned that, unlike the petitioner in Lai v. Holder, Jit did not provide a "plausible explanation for the omission," his explanation (which the BIA acknowledged) was that his attorney "had not written it." Nor do we understand why moving in with nearby relatives after a frightening event would be so significant as to be worth mentioning until he was asked. If he was hiding from the police, that would strengthen his claim. We do not see why failing to mention it until asked undermined his credibility.

The BIA also reasoned that the IJ did not clearly err because she "did not base her adverse credibility finding solely on this omission; rather, she based her finding on multiple inconsistencies in addition to this omission." However, as stated above, such other inconsistencies as there may have been were trivial. The

6

factors on which the BIA and IJ relied did not amount to substantial evidence on the record that Jit was not telling the truth.

**PETITION GRANTED; REMANDED** for further proceedings.

*Amar Jit v. William Barr*, No. 15-73695

R. NELSON, Circuit Judge, dissenting:

I respectfully dissent.

The REAL ID Act grants the fact-finding Immigration Judge ("IJ") an exceptionally wide berth in making credibility determinations. The Act likewise "significantly restrict[s]" this court's review "of an IJ's adverse credibility finding." *Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010) (quotation omitted). As "[c]redibility determinations are findings of fact," *Singh v. Lynch*, 802 F.3d 972, 974 (9th Cir. 2015), the IJ's determination is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B)). "Only the most extraordinary circumstances will justify overturning an adverse credibility determination." *Shrestha*, 590 F.3d at 1040 (quotation omitted).

The task before this court is to determine whether substantial evidence supports the IJ's credibility determination as adopted by the Board of Immigration Appeals ("BIA"). *See Singh*, 802 F.3d at 974-75. This factual finding must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Hu v. Holder*, 652 F.3d 1011, 1016 (9th Cir. 2011) (quotation omitted).

1

In determining that the IJ and the BIA erred in this case, the majority gives short shrift to the applicable standard of review. Substantial evidence review is not de novo review of the totality of the circumstances. Rather, it is a highly deferential standard that requires upholding the adverse credibility finding "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The IJ offered several factors which "cumulatively [] undermined [Jit's] credibility such that [she could not] determine what [was] and [was] not credible and believable." The BIA reiterated several of these factors in its review. Even if some of the IJ's finding were "either unsupported or irrelevant," this court "must uphold the IJ's adverse credibility determination *so long as even one basis* is supported by substantial evidence." *Jiang v. Holder*, 754 F.3d 733, 738 (9th Cir. 2014) (quotation omitted) (emphasis in original). I am persuaded that two of the identified grounds relied on by the IJ and adopted by the BIA to support the credibility determination are not only "supported by substantial evidence" but also go "to the heart" of Jit's claim. *Id*.

First, the majority contends that the IJ based the credibility determination on the fact that Jit was treated by a pediatrician. The majority notes, correctly, that a grown man may be treated by a pediatrician. The majority, however, attributes Jit's confusion in the exchange before the IJ to be over why Dr. Paul was a

2

pediatrician. While this is a plausible reading of the transcript (hardly a model of clarity), the transcript just as readily supports an inference that Jit may have either not seen a doctor or may have overstated his injuries in an attempt to bolster his asylum claim. This is particularly true where the letter from the doctor—the sole documentary evidence—was deemed inadmissible, and Jit has not properly challenged that finding here.

Given these conflicting potential interpretations of the transcript, we are duty bound to afford deference to the IJ who is "in the best position to assess demeanor and other credibility cues that we cannot readily access on review." *Shrestha*, 590 F. 3d at 1041. This court is "not free to look anew at the testimony and then measure the soundness of the agency's decision by what we would have found. Nor does evidence compel the opposite conclusion just because it would also support a different result." *Donchev v. Mukasey*, 553 F.3d 1206, 1213 (9th Cir. 2009) (footnotes omitted).

The IJ—sitting as fact-finder—found Jit's testimony and his inability to provide an "adequate explanation for who he was seen by, to have some weight when assessing [his] overall credibility." Unlike the cabined characterization of her opinion offered by the majority, the IJ based her determination on Jit's failure to respond when asked why he would see a pediatrician and on points in his testimony where he seemed to be retracting his statement about which doctor he

3

had seen. The IJ's reasoning goes far beyond confusion over a grown man seeing a pediatrician and extends to qualities espoused by the REAL ID Act: responsiveness and consistency.

Second, the majority sweeps aside the inconsistency in Jit's written application, asylum interview and statements at his deportation hearing about his residence during the five months prior to his move to the United States. The majority asserts that Jit only moved 17 miles away and therefore he likely thought that the move was insignificant. Perhaps. But the IJ "based her adverse credibility finding, in part, on [this] omission and the respondent's lack of a meaningful explanation [for the omission]." In this case, Jit could not provide an explanation for the omission other than that his attorney "had not written it." This omission goes to the heart of Jit's claim of persecution by demonstrating that he could live peaceably in India—just miles away from his hometown. "Although inconsistencies no longer need to go to the heart of the petitioner's claim, when an inconsistency is at the heart of the claim it doubtless is of great weight." *Shrestha*, 590 F.3d at 1047. Because this fact tended to negate Jit's status as a refugee, it's omission appropriately supported an adverse credibility finding.

Based upon the standards for credibility determinations delineated by the REAL ID Act, each of these examples of non-responsiveness, inconsistency and omission qualify as substantive evidence. Although the majority's explanation for

4

Jit's inconsistencies may be plausible, they do not rise to the level such that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Accordingly, I dissent.