NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 26 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MINGGUO CHEN,

  Petitioner,

v.

WILLIAM P. BARR, Attorney General,

  Respondent.

No.  17-71603

Agency No. A088-283-388

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 13, 2020
Pasadena, California

Before:  BERZON, R. NELSON and LEE, Circuit Judges.

Petitioner MingGuo Chen seeks review of the Board of Immigration Appeals's ("BIA") decision to affirm the immigration judge's ("IJ") denial of his application for asylum.  We grant Chen's petition and remand for further proceedings.

1. The BIA affirmed the IJ's adverse credibility determination based on five grounds: (1) it found implausible the fact that Chen would marry in 1997 and wait

---

*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

to register his marriage until 2005; (2) it found nonresponsive Chen's answers to the IJ's questions about when he arranged to come to the United States; (3) it found inconsistent Chen's testimony about his knowledge of his wife's reasons for having the abortion; (4) it found inconsistent Chen's statements about whether he had been required to obtain a permit for the birth of his first child; and (5) it found inconsistent Chen's testimony as to when he learned about his wife's abortion and whether he had discussed the abortion with his wife. None of these grounds is supported by substantial evidence in the record.

The record of Chen's merits hearing indicates that his ability to testify was substantially impeded. Chen possesses a second-grade education and is "very illiterate." *See Arulampalam v. Ashcroft*, 353 F.3d 679, 680, 687 (9th Cir. 2003). He speaks, but cannot write, in a dialect known as Fuqing. And even though he can only "barely understand" Mandarin, the hearing was conducted through a Mandarin interpreter. It is apparent from the transcript that the interpreter made numerous translation errors that seriously confused Chen's testimony. *See He v. Ashcroft*, 328 F.3d 593, 596 (9th Cir. 2003). These difficulties were amplified by the IJ's open hostility to Chen; she interrupted and intimidated him throughout, repeatedly accusing him of lying but mischaracterizing his testimony. *See Garrovillas v. I.N.S.*, 156 F.3d 1010, 1015 (9th Cir. 1998). The five bases for the agency's adverse credibility determination must be reviewed against this backdrop.

First, Chen plausibly explained the delay between his wedding and registration of his marriage when he clearly stated that he could not have registered the marriage during its first two years due to his age and that he had no practical need to register the marriage until six more years had passed, when registration was required to enroll his daughter in school. Given Chen's reasonable explanation for the delay, the agency's speculative finding of implausibility was not supported by the record. *See He*, 328 F.3d at 600; *Singh v. I.N.S.*, 292 F.3d 1017, 1025 (9th Cir. 2002).

Next, the agency found Chen nonresponsive as to precisely when he arranged to come to the United States. But he did respond, testifying that he remembered the year but not the month. The IJ's insistence that Chen remember the exact month, ten years before his hearing, when he began making his travel arrangements suggests a "predisposition to discredit" Chen's testimony, particularly in light of the IJ's "impatience and hostility toward [Chen], bullying and haranguing him from the inception of the hearing to its conclusion." *Garrovillas*, 156 F.3d at 1014-15.

The three inconsistencies on which the IJ and BIA relied are similarly unsupported by substantial evidence. First, Chen was not inconsistent as to his knowledge of his wife's reasons for having the abortion. Chen was consistently clear that his wife had the abortion to secure the release of his parents. That Chen

3

could not explain with more specificity why his wife prioritized his parents' needs over her interest in continuing her pregnancy, a dilemma he specifically noted when explaining his own initial uncertainty, does not undermine his consistency. *See Zahedi v. I.N.S.*, 222 F.3d 1157, 1167 (9th Cir. 2000).

Likewise, Chen did not contradict himself about the need for a permit for the "early birth." Chen repeatedly insisted that a permit was required, although he did not know why this was the case. He later said that he did not need to "apply" for a permit, after forceful questioning by the IJ about whether he had been expected to "apply" for one. But that is different from saying that he did not need to obtain a permit or else pay a retroactive fee, which is what happened. Moreover, even if one viewed Chen's testimony as contradictory, a rural farmer of Chen's education level could not reasonably be expected to testify with perfect clarity as to China's birth permit requirements. *See Arulampalam*, 353 F.3d at 687. Given the language difficulties, together with the IJ's "impatien[ce], hostil[ity], and hectoring" regarding the point (especially after Chen repeatedly stated his lack of understanding of the permitting process), Chen's testimony on this issue is more fairly explained as a response to the badgering than as a botched attempt to deceive the agency. *See He*, 328 F.3d at 603.

Finally, Chen's testimony regarding whether and when he discussed the abortion with his wife and whether and when he knew about the abortion is

4

confused but not inconsistent. Chen's testimony alternated between addressing two different points in time: when he spoke to his wife before she turned herself in, and when he proved unable to stop the abortion because his wife was in custody. Chen testified about a pre-abortion discussion with his wife, his lack of knowledge as to the exact moment she decided to turn herself in, his inability to talk with her once she was in custody, and his absence from home on the date of the abortion itself. Neither the questions nor the answers were clear about which time period was being addressed. Chen's testimony is more fairly described as "disjoint[ed] and incoheren[t]" than as inconsistent, and it cannot support an adverse credibility determination. *See Abovian v. I.N.S.*, 219 F.3d 972, 979 (9th Cir. 2000) (quotation marks and citation omitted).

2. The agency also refused to credit three documents that supported Chen's testimony, questioning their authenticity and reliability instead of factoring their corroborating force into the agency's credibility determination. This refusal was unwarranted, particularly in light of the language and educational difficulties discussed above. Chen explained generally when and why the documents were issued. That he was unable to define terms of art or to recall, nearly twelve years later, the precise date of issuance of the documents is within "the normal limits of human understanding and memory [which] may make some … lack of recall present in any witness's case." *Shrestha v. Holder*, 590 F.3d 1034, 1044-45 (9th

5

Cir. 2010). "Testimonial vagueness" is not a sufficient reason to reject documents issued by a foreign government. *Zahedi*, 222 F.3d at 1165. Where there is no evidence in the record indicating how similar documents would ordinarily appear or be issued, suspicion of the documents based on their appearance without more is speculation and thus not a permissible reason to reject their corroborating force. *Lin v. Gonzales*, 434 F.3d 1158, 1163 (9th Cir. 2006).

The petition for review is **GRANTED** and the case is **REMANDED** to the BIA for further proceedings.

*Mingguo Chen v. William Barr*, No. 17-71603



R. NELSON, Circuit Judge, Dissenting:

I respectfully dissent.

Under the REAL ID Act's restrictive standard of review for an IJ's adverse credibility determinations, and because such determinations are "findings of fact," *Singh v. Lynch*, 802 F.3d 972, 974 (9th Cir. 2015), the IJ's determination here is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "Only the most extraordinary circumstances will justify overturning an adverse credibility determination." *Shrestha v. Holder*, 590 F.3d 1034, 1041 (9th Cir. 2010) (internal quotation marks omitted).

The majority fails to appropriately apply this standard of review. Substantial evidence review is not de novo review of the totality of the circumstances. Rather, it is a highly deferential standard that requires upholding the adverse credibility finding "*so long as even one basis* is supported by substantial evidence," *Jiang v. Holder*, 754 F.3d 733, 738 (9th Cir. 2014) (quotation omitted), regardless of whether the inconsistency goes to the heart of the applicant's claim. *Id.*

Substantial evidence supports the agency's adverse credibility determination here. Chen testified that he did not discuss the abortion decision with his wife before she obtained the abortion, but rather that he "learned [about it] after [he]

returned back" from working. He also testified that he did not know why she decided to get an abortion. However, he later testified inconsistently that he had communicated to his wife prior to the abortion that he "was reluctant to have her have [an] abortion," and that he opposed her decision to turn herself in, but that she responded to him that getting an abortion was necessary to "satisfy the government" because Chen's "parents were in custody." The IJ gave Chen an opportunity to explain the inconsistency, to which Chen's explanation was simply that he could not "remember it clearly." While Chen's testimony was often disjointed because of an apparent language barrier, a reasonable adjudicator would not be compelled to conclude that his testimony about whether he discussed the abortion decision with his wife before the abortion, and whether he knew why she decided to get an abortion, was credible.

Although the majority's explanations for Chen's inconsistency may be plausible, they do not rise to the level such that "any reasonable adjudicator would be compelled to conclude to the contrary." § 1252(b)(4)(B).

Accordingly, I respectfully dissent.