NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 19 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FRANCISCO ALDANA-CANO, AKA Rafael Aldana, AKA Francisco Cano, AKA Jose Francisco Lopez, AKA Perro Silva, Petitioner, v. WILLIAM P. BARR, Attorney General, Respondent. | No. 17-71092 Agency No. A029-159-490 MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 8, 2020
Pasadena, California

Before: M. SMITH and LEE, Circuit Judges, and CARDONE,** District Judge.

Petitioner asks this court to reverse a Board of Immigration Appeals (BIA) final removal order and remand for further proceedings. The parties are familiar with the facts, so we do not recite them here, except as necessary to provide context to our ruling. We have jurisdiction under 8 U.S.C. § 1252.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

1.     Petitioner first argues that the BIA erred in affirming an Immigration Judge's (IJ) decision to reopen and cancel his asylum.  Here, Petitioner contends that the IJ and BIA improperly used his 1993 California conviction for sexual abuse of a minor as grounds to retroactively apply the Illegal Immigration Reform and Immigration Responsibility Act of 1996's (IIRIRA) asylum termination provisions to such status conferred in 1989.

IIRIRA's "definitional statute," codified as 8 U.S.C. § 1101(a)(43), which makes sexual abuse of minors an aggravated felony, is retroactive. *Ledezma-Galicia v. Holder*, 636 F.3d 1059, 1079 (9th Cir. 2006).  However, the "effective date" clause in IIRIRA's definitional statute does not control IIRIRA's substantive immigration consequences, even if those consequences turn on an aggravated felony conviction. *Id*.  Rather, cancellation of asylum due to an aggravated felony conviction involves another part of IIRIRA, codified as 8 U.S.C. §§ 1158(b)(2)(B)(i) and 1158(c)(2)(B). *See Pechenkov v. Holder*, 705 F.3d 444, 449 (9th Cir. 2011).  These provisions do not contain language permitting their retroactive application. *See Ixcot v. Holder*, 646 F.3d 1202, 1207–08 (9th Cir. 2011).  They only pertain to asylum requested on or after April 1, 1997. *See* 8 C.F.R. § 208.24(a)(2) (2013).  In addition, a contrary reading would attach new legal consequences to pre-IIRIRA crimes. *See Ixcot*, 646 F.3d at 1208–09.  Thus, IIRIRA cannot be used to retroactively terminate asylum applied for on or before March 31, 1997. *See id*. at 1207–09.

In adjudicating Petitioner's immigration case, the IJ rejected the government's IIRIRA-centric arguments for canceling asylum granted in 1989. This decision to set IIRIRA aside was correct as Petitioner obtained asylum before IIRIRA took effect on April 1, 1997. Instead, the IJ applied regulations governing termination of asylum applied for on or before March 31, 1997. *See* 8 C.F.R. § 208.24(a)(3) (2013); 8 C.F.R. § 208.14(c)(1) (1993); 8 C.F.R. § 208.8(f)(iv) (1989). These regulations authorize IJs to cancel asylum if the alien committed an act that would have justified denial of asylum, such as a "particularly serious crime." When IIRIRA does not apply, "particularly serious crimes" are defined using the test set out in *Matter of Frentescu*, 18 I. & N. Dec. 244 (BIA 1982). *Blandino-Medina v. Holder*, 712 F.3d 1338, 1342–49 (9th Cir. 2013). The IJ properly analyzed Petitioner's 1993 sexual abuse of a minor conviction under the *Matter of Frentescu* test, and deemed it a "particularly serious crime" warranting termination of asylum Petitioner secured in 1989. The BIA upheld the IJ's decision to cancel Petitioner's asylum on the same ground. Because there is no error here, we cannot reverse cancellation of the asylum that Petitioner was granted in 1989. *See Pechenkov*, 705 F.3d at 449.

2.      Petitioner also argues that the IJ and BIA wrongly used a "reason to believe" standard in finding that his 1985 marijuana distribution conviction made him a drug trafficker subject to non-waivable inadmissibility that barred adjustment of status. But this court has repeatedly explained that the "reason to believe" standard serves

3

that exact purpose. *See Rodriguez v. Holder*, 683 F.3d 1164, 1168 (9th Cir. 2012); *Gomez-Granillo v. Holder*, 654 F.3d 826, 831 (9th Cir. 2011); *Lopez-Molina v. Ashcroft*, 368 F.3d 1206, 1209 (9th Cir. 2004); *Alcaron-Serrano v. INS*, 220 F.3d 1116, 1119 (9th Cir. 2000). And the IJ's decision to deny Petitioner a waiver of inadmissibility, as well as the BIA's affirmance, correctly applied the "reason to believe" standard. Accordingly, we cannot reverse denial of Petitioner's request for a waiver of inadmissibility for adjustment of status.

3.      In addition, Petitioner contends that the IJ and BIA improperly failed to give preclusive effect to credibility determinations and fact findings made in response to 1989 testimony during a 2015 hearing in which Petitioner's 2012 asylum application was denied. Here, Petitioner relies on the collateral estoppel doctrine, which does not apply if the controlling facts or law have changed. *Oyeniran v. Holder*, 672 F.3d 800, 806–07 (9th Cir. 2012). Petitioner offered very different facts in support of his 1989 and 2012 asylum applications. Further, the REAL ID Act of 2005 governed the credibility determinations made in Petitioner's 2015 hearing. *Shrestha v. Holder*, 590 F.3d 1034, 1039–40 (9th Cir. 2010). Because the relevant facts and law both changed between 1989 and 2015, the IJ and BIA did not err in declining to apply collateral estoppel, so we cannot reverse denial of Petitioner's 2012 asylum request.

4.      Finally, Petitioner argues that the IJ and BIA wrongly denied him relief under the United Nations Convention Against Torture (CAT) by allowing an adverse

credibility determination made with respect to his 2012 asylum application to "wash over" his CAT claim. Petitioner also alleges that this adverse credibility finding was the only basis for rejection of his CAT claim. However, Petitioner's requests for asylum and CAT relief were based on the same statements, and IJs can extend adverse credibility determinations to all claims supported by the same testimony. *Singh v. Lynch*, 802 F.3d 972, 977 (9th Cir. 2015). In addition, adverse credibility determinations only wash over CAT claims if other relevant evidence, such as country conditions, is ignored. *See Shrestha*, 590 F.3d at 1048–49. Here, however, the IJ carefully considered country conditions before denying Petitioner CAT relief. Furthermore, Petitioner's testimony did not indicate that he would be personally targeted for torture if returned to Guatemala. The only other evidence that Petitioner submitted in support of his CAT claim consisted of a series of generalized Amnesty International, Human Rights Watch, and State Department reports describing issues with the Guatemalan police. These general materials do not compel a conclusion that Petitioner would be tortured as a result of deportation. *See id*. Thus, the IJ and BIA did not improperly discard Petitioner's CAT claim.

For the above reasons, the judgment of the BIA is **AFFIRMED**.